UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

             Plaintiff,                             Civil Action No. 16-13166
                                               Honorable Nancy G. Edmunds
                                               Magistrate Judge David R. Grand

v.

RUTH JOHNSON and
BILL SCHUETTE,

             Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND TAKE UNDER ADVISEMENT IN PART DEFENDANTS' MOTION TO DISMISS [10]

Before the Court is a Motion to Dismiss filed by Defendants Ruth Johnson, in her official capacity as Michigan Secretary of State, and Bill Schuette, in his official capacity as Michigan Attorney General. (Doc. #10). *Pro se* Plaintiff Peter Bormuth filed a response on October 11, 2016. (Doc. #11). Defendants filed a reply on October 17, 2016. (Doc. #12). An Order of Reference was entered on September 1, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #3).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [**10**] be **GRANTED IN PART** by: (1) dismissing all claims as to Defendant Bill

Schuette; and (2) dismissing Bormuth's "recount" claim as to Defendant Ruth Johnson.[1]

## II.    REPORT

### A.    Background

*Pro se* Plaintiff Peter Bormuth was a Democratic primary candidate for the 64th District Michigan House of Representative seat (currently held by Republican Earl Poleski, who, according to Bormuth, is Christian) in the August 2, 2016 primary election.  (Doc. #1 at ¶ 7). Bormuth, a Pagan Druid, alleges that local Christian Democratic party leaders did not want him to run unopposed in the primary election, and thus recruited another candidate – "Ron Brooks, a Christian Minister with no previous political involvement" – to run against him.  (*Id.* at ¶¶ 7, 14). Moreover, Bormuth alleges that Poleski filed a complaint with the Secretary of State on July 23, 2016, asserting that Bormuth's candidate committee had violated the campaign finance law.[2] (*Id.* at ¶ 23).  Bormuth alleges that while waiting in line to obtain his ballot on the day of the primary election, he mentioned to a poll worker, "I always vote, but this will be the first time I ever had an opportunity to vote for myself."  (*Id.* at ¶ 34).  Bormuth alleges that the Precinct Captain then asked, "O, who are you?", to which another poll worker responded, "You don't

---

[1] As discussed below, Bormuth's complaint asserts claims based on the Defendants' alleged wrongful denial of his recount petition ("recount" claim) and alleged unconstitutional requirement that campaign finance disclosure documents be filed in a certain electronic format ("electronic filing" claim).  In his complaint, Bormuth notes that the November election is "approaching rapidly, requiring an immediate decision on the recount [claim]."  (Doc. #1 at ¶ 77).  He also attached as an exhibit to his complaint a two-page document entitled "Request for Expedited Consideration."  (Doc. #1-1 at 3-4).  In it, Bormuth simply reiterates his request for an "expedited hearing in this case."  (*Id.*).  In light of Bormuth's request and the impending election, this Report and Recommendation addresses only the recount claim.  To the extent Defendants' motion seeks dismissal of Bormuth's electronic filing claim, the Court will take that matter under advisement and will issue a separate Report and Recommendation in due course.

[2] According to Bormuth, "Poleski saw one of [Bormuth's] Pagan pro-abortion/pro-environment anti-[C]hristian television political ads which offended him and he filed a complaint based on his knowledge of how much a TV ad costs."  (Doc. #1 at ¶ 23).  Bormuth alleges that these ads "are the real reason why [he] is being persecuted by the partisan Christian Secretary of State in this matter."  (*Id.* at ¶ 24).

want to know." (*Id.*).  Bormuth alleges that after stating his name, the Precinct Captain "started humming 'Jesus is Lord' letting [him] know that she opposed [his] candidacy." (*Id.*).

Bormuth lost the primary election to Brooks by a wide margin, particularly on a percentage basis; the preliminary vote count was 1239 to 420 in Brooks' favor.[3]  (*Id.* at ¶ 35).  Bormuth characterizes his preliminary vote total as "a suspicious number since 420 is street slang for marijuana, and [his] platform advocated the legalization of marijuana." (*Id.*).  Bormuth alleges that on August 6, 2016, he emailed Colleen Garety, Elections Director at the Jackson County Courthouse office, and Evelyn Quiroga, Director of the Disclosure Data Division at the Secretary of State, "requesting a recount in his race due to possible manipulation of the voting machine tallies." (*Id.* at ¶ 36).  And on August 11, 2016, Bormuth filed a Petition for Recount under MCL § 168.879 with the Secretary of State.  (*Id.* at ¶ 37; *Id.* at 66).  In the petition, Bormuth alleged that he "is aggrieved over the possibility of fraud." (*Id.* at 66).  He then cited a 2006 University of Connecticut study, which purportedly found that the type of voting terminals used in Jackson County were vulnerable to "a devastating array of attacks," and asserted that Barry County, Michigan had experienced "multiple past problems with these machines." (*Id.*).  Bormuth requested a recount in the County of Jackson, City of Jackson, Ward 1, Precinct 2 and tendered the required $125 fee.  (*Id.* at ¶ 37; *Id.* at 66).

Bormuth alleges that on August 17, 2016, Michigan election officials advised him over the phone that "the Department of State would not honor [his] Petition for Recount because the results of that one precinct would not affect the outcome of the election." (*Id.* at ¶ 42; *Id.* at 47).  Similarly, he was allegedly advised on August 18, 2016, in an email from Sally Williams, Director of the Election Liaison Division at the Michigan Bureau of Elections, that his petition

---

[3] Apparently, it was ultimately determined that Bormuth lost by a count of 1240-419.  (Doc. #1 at ¶ 68; Doc. #1 at 63).

for a partial recount had been rejected.  (*Id.* at ¶ 49; *Id.* at 48).  In her email, Williams explained

that "[t]he purpose of a recount under law is to confirm the election results as canvassed.  A valid

request for a partial recount must include a sufficient number of votes to possibly affect the

outcome of the election.  Your petition seeking the recount of a single precinct cannot meet this

criteria and is therefore an insufficient filing . . . . "  (*Id.*).  Williams informed Bormuth that the

$125 fee he had tendered would be returned to him.  (*Id.*).

On September 1, 2016, Bormuth filed his instant complaint pursuant to 28 U.S.C. §

1343(a)(3)-(4); 42 U.S.C. §§ 1973i(c),[4] 1983, 1985(3); MCL § 168.879; and the Equal Protection

and Due Process Clauses of the Fourteenth Amendment (among other statutes).  (*Id.* at ¶¶ 58-61,

64-65).  He seeks a preliminary and permanent order requiring Defendants Michigan Secretary

of State Ruth Johnson and Michigan Attorney General Bill Schuette "to undertake the Recount

requested by [Bormuth] in his Petition for Recount."  (*Id.* at 23).  In addition, he claims he is

entitled to an award of nominal damages and costs.  (*Id.*).

In light of Bormuth's request for expedited consideration (Doc. #1 at ¶ 77; Doc. #1-1 at

3-4), on September 16, 2016, the Court held a telephonic conference, where the parties agreed on

the dates reflected in the Briefing Schedule entered by the Court.  (Doc. #8).  On September 30,

2016, Defendants filed a motion to dismiss.  (Doc. #10).  On October 11, 2016, Bormuth filed a

response.  (Doc. #11).  Defendants filed a reply on October 17, 2016.  (Doc. #12).

### B.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a

---

[4] This statute has been transferred to 52 U.S.C. § 10307.  That statute, which is part of Chapter 103, Enforcement of Voting Rights, and entitled "Prohibited [A]cts," does not provide any specific right to a recount.  Subsection (a) of the statute does provide that "No person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote under any provision of chapters 103 to 107 of this title or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote."  52 U.S.C. §10307(a).

complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56). To show entitlement to relief, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint[5] as true. *League of United Latin Am. Citizens*, 500 F.3d at 527; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds

---

[5] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at \*3 (E.D. Mich. Mar. 30, 2011).

### C.    Analysis

#### 1.    *Bormuth's Claims against Defendant Bill Schuette Should be Dismissed*

In their motion to dismiss, Defendants argue that "Bormuth has . . . failed to state any federal claim against the Attorney General [Bill Schuette]" in his complaint because "Bormuth merely identifies him as a party" and makes no allegation of personal involvement. (Doc. #10 at 9). In his response, Bormuth says that when he filed his complaint, he "was unaware that inaction by the Attorney General was not sufficient to make him a party to the injury in fact that [he] has suffered." (Doc. #13 at 10). But now, Bormuth says that "[w]ith the Court[']s consent, [he] will remove Bill Schuette's name from the case caption on future filings." (*Id.*).

Given that both parties are in agreement on this matter, the Court recommends that Bormuth's claims against Defendant Schuette be dismissed.

6

    2.    *Bormuth's Recount Claim against Defendant Ruth Johnson Should be Dismissed*

        a.    *Bormuth's Recount Claim is Not Moot because it Falls into the Mootness Exception for Cases "Capable of Repetition, yet Evading Review"*

In their motion to dismiss, Defendants argue that "Bormuth's recount claim is moot because critical deadlines in the election process have already come and gone." (Doc. #10 at 11). In particular, the deadline for having ballots approved, printed, and distributed to military and absentee overseas voters under the federal MOVE Act[6] is September 24, 2016, so Defendants argue that "[t]he time for a challenge like the one filed here has already passed." (*Id.*). In his response, Bormuth argues that his recount claim falls under an "exception to the mootness doctrine [that] exists for wrongs that are 'capable of repetition, yet evading review.'" (Doc. #11 at 18). At least on the very limited record presently before the Court, Bormuth has the better argument.

"The issue of mootness implicates the court's subject matter jurisdiction inasmuch as federal courts are limited by Art. III of the Constitution to deciding cases and controversies." *Mosley v. Hairston*, 920 F.2d 409, 414 (6th Cir. 1990). Under Article III, federal courts "may only adjudicate actual ongoing cases or controversies." *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004). "Generally, 'a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *Lawrence v. Blackwell*, 430 F.3d 368, 370 (6th Cir. 2005) (citing *L.A. Cnty. v. Davis,* 440 U.S. 625, 631 (1979)). An actual ongoing case or controversy "must be extant at all stages of review." *Chirco*, 384 F.3d at 309 (citing *Arizonans for Official English v. Ariz.,* 520 U.S. 43, 67 (1997)). An inquiry into mootness must therefore

---

[6] The federal MOVE Act is 42 U.S.C. § 1973ff-1(a)(8) (recodified at 52 U.S.C. § 20302(a)(8)).

7

be made at every stage of the litigation.  *Lawrence*, 430 F.3d at 370-71.

The Supreme Court has established a mootness exception for cases "capable of repetition, yet evading review."  *Chirco*, 384 F.3d at 309 (6th Cir. 2004) (citing *S. Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911)); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 597-98 (6th Cir. 2006) (citing *Moore v. Ogilvie,* 394 U.S. 814, 815 (1969)); *Libertarian Party of Mich. v. Johnson*, 714 F.3d 929, 931-32 (6th Cir. 2013).  This mootness exception applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Lawrence*, 430 F.3d at 371 (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)).  The party asserting this exception bears the burden of establishing that both prongs are met.  *Id.* (internal citations omitted).

Here, the first prong of the mootness test is met:  the challenged action was too short in duration to be fully litigated before it ended.  The primary election for which Bormuth is requesting a recount took place on August 2, 2016.  Defendants argue that his claim is moot, however, because a September 24, 2016 deadline – that came less than two months later – has passed.  (Doc. #10 at 11).  The Sixth Circuit has recognized that "[d]isputes over election laws 'almost always take more time to resolve than the election cycle permits,' so '[i]n many cases, we have held that a challenge to an election law is not moot although the date of the election passed or the election was voided.'"  *Libertarian Party of Mich.*, 714 F.3d at 932 (citing *Lavin v. Husted,* 689 F.3d 543, 546 (6th Cir. 2012); *Carey v. Wolnitzek,* 614 F.3d 189, 197 (6th Cir. 2010); *Libertarian Party of Ohio,* 462 F.3d at 585; *Rosen v. Brown,* 970 F.2d 169, 173 (6th Cir. 1992)).  The Court finds that this prong is met because two months is too short of a time period to allow the case to be fully litigated.  *Id.* ("We have found that election cases fall into the

8

2:16-cv-13166-NGE-DRG   Doc # 13   Filed 10/24/16   Pg 9 of 23   Pg ID 308

'capable of repetition, yet evading review' exception even when challengers had a period of eleven months to pursue their claims in federal court.").

The second prong is also met. Bormuth argues that because he "may run for office again" and because "other candidates may also wish to check voting machine tabulations with random precinct recounts," there is a reasonable expectation that the same complaining party would be subjected to the same action again. (Doc. #11 at 18-19). In his view, "voting machine error or fraud is likely to reoccur," and "[t]here is a reasonable expectation that some candidate in the future will ask for a single precinct recount because of their concern for voting machine manipulation." (*Id.* at 18-20). Given that the Sixth Circuit has held that "the standard for the second prong of the mootness exception is 'somewhat relaxed in election cases,'" *Libertarian Party of Mich.*, 714 F.3d at 931-32; *Lawrence*, 430 F.3d at 372, and Bormuth having pointed out the ways in which there is a reasonable expectation that the controversy will happen again, the Court finds that this prong is met. *Libertarian Party of Mich.*, 714 F.3d at 931-32 (finding that this prong was met because "[t]here is . . . a reasonable expectation that this controversy will recur, at least with respect to some other candidate and political party," where "[w]e have previously allowed election law challenges to move forward even if the challenging parties do not have cognizable legal interests, because 'the controversy almost invariably will recur with respect to some future potential candidate' and the standard for the second prong of the mootness exception is 'somewhat relaxed in election cases'") (internal citations omitted).

Moreover, the purpose of the second prong is to determine "whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Lawrence*, 430 F.3d at 371 (citing *Honig v. Doe,* 484 U.S. 305, 319 n.6 (1988) (emphasis in original)). Therefore, in addition to the reasons already stated

9

above, the Court finds that this prong is met because Bormuth and others are capable of running in an election and encountering the types of issues raised in this case. *Id.* ("Although Lawrence has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so . . . . The law at issue is still valid and applicable to both Lawrence and any independent candidate [a voter] might wish to vote for in future election years.  Therefore, the controversy is capable of repetition.").

In sum, Bormuth's recount claim is not moot because it falls into the mootness exception for cases "capable of repetition, yet evading review."

> b. *Bormuth's Recount Claim is not Barred by Laches because Defendants Have Not Shown Either that (1) Bormuth Acted with a Lack of Diligence or Unreasonable Delay, or (2) Defendants were Prejudiced as a Result*

Defendants also raise the issue of laches.  In particular, they take issue with Bormuth not filing his federal lawsuit "until nearly one month after the primary election and just a few weeks before overseas absentee ballots had to be mailed out for the general election."  (Doc. #10 at 13). This argument lacks merit.

The Sixth Circuit characterizes laches as "a negligent and unintentional failure to protect one's rights." *Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 919 (E.D. Mich. 2007) (citing *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991)).  A party asserting laches must show two elements:  "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it."  *Id.* (citing *Herman Miller, Inc. v. Palazzetti Imps. and Exps., Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)); *Green Party of Mich. v. Land*, 541 F. Supp. 2d 912, 916 n.3 (E.D. Mich. 2008) ("Laches consists of two elements:  '(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice

to the defending party.'") (citing *Brown-Graves Co. v. Cent. States, Se. and Sw. Areas Pension Fund,* 206 F.3d 680, 684 (6th Cir. 2000)).   A "mere lapse of time" does not entitle a party to relief; instead, rather, laches results

> from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced.  By his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or changed circumstances may make it more difficult to defend against the claim.

*Id.* (internal citations omitted).

Defendants fail to explicitly address how they meet these elements for laches.  Regarding the first element, Defendants do not show that Bormuth acted with unreasonable or negligent delay.  Although Bormuth filed his complaint one month after the primary election, during this time, Bormuth was not idly letting time pass.  To the contrary, he emailed Garety and Quiroga a request for a recount on August 6, 2016 – just four days after the primary.  (Doc. #1 at ¶ 36).  Five days later, on August 11, 2016, he filed a petition for recount.  (*Id.* at ¶ 37).  After he received notice on August 18, 2016, that his petition was denied (*Id.* at ¶ 49; *Id.* at 48), he continued to take timely additional steps to assert his rights.  That same day, he filed a Notice of Intention with the Clerk of the Court of Claims.  (Doc. #11 at 21).  And the next day, on August 19, 2016, he informed Williams of his intention to sue.  (*Id.*).  Bormuth filed his complaint thirteen days later.  (*Id.*).

Regarding the second element, Defendants fail to show that they were prejudiced by the time it took Bormuth to file his suit.  In the introduction to their motion, Defendants assert that "[t]oo much time has passed between the August 2, 2016 primary election and today for the Court to have any ability to grant the injunctive relief requested without seriously prejudicing Defendants and disrupting the general election."  (Doc. #10 at 5).  But in their actual argument

11

for laches, they do not offer any facts or arguments to show how or why they would be prejudiced if the Court were to grant the injunctive relief Bormuth is requesting.   While Defendants' argument may relate to the fact that the ballots for overseas voters have already been approved, printed, and distributed, with nothing more, they have not satisfied their burden of showing how this element is met.  *Green Party of Mich.*, 541 F. Supp. 2d at 916 n.3 ("Because Defendant offers no evidence of prejudice, Plaintiffs' claims are not barred by the doctrine of laches.").

For the reasons explained above, Bormuth's recount claim is not barred by laches.

c.     *Bormuth's Recount Petition does not Make a Sufficient Allegation of Fraud to Satisfy the Requirements in MCL § 168.879(1)*

In terms of Bormuth's recount claim, his principal argument is that because he "met Michigan statutory requirements for a recount petition" (Doc. #11 at 22), the Defendants' refusal to honor his recount petition violated his rights under the Michigan statute, as well as his rights under the United States Constitution.  But in making this argument, Bormuth focuses only on one small portion the relevant Michigan statute:  MCL § 168.879.  (*Id.*) (citing only subsection (1)(b)).  A careful analysis of all of the statute's salient provisions shows he did not satisfy its requirements for a recount.

Pursuant to MCL § 168.879(1), a candidate "voted for at a primary or election for an office" may petition for a recount of votes if all of the following eight requirements are met:

> (a) The office is an office for which the votes are canvassed by the board of state canvassers under section 841 or is the office of representative in Congress, state representative, or state senator for a district located wholly within 1 county.

> (b) The petition alleges that the candidate is aggrieved on account of fraud or mistake in the canvass of the votes by the inspectors of election or the returns made by the inspectors, or by a board of county canvassers or the board of state canvassers.  The petition shall contain specific allegations of

wrongdoing only if evidence of that wrongdoing is available to the petitioner. If evidence of wrongdoing is not available, the petitioner is only required to allege fraud or a mistake in the petition without further specification.

(c) Except as otherwise provided in this subdivision, the petition for a recount is filed not later than 48 hours following the completion of the canvass of votes cast at an election. If the recount petition relates to a state senatorial or representative district located wholly within 1 county or to the district of a representative in Congress located wholly within 1 county, the petition for a recount shall be filed not later than 48 hours following the adjournment of the meeting of the board of state canvassers at which the certificate of determination for that office was recorded pursuant to section 841. However, for a special election for representative in Congress, state senator, or state representative for a district located wholly within 1 county, the petition for recount shall be filed not later than 48 hours after the certificate of determination is filed with the secretary of the board of state canvassers.

(d) The petition is presented to and filed with the secretary of state.

(e) The petition is written or printed and is signed and sworn to by the candidate.

(f) The petition sets forth as nearly as possible the nature and character of the fraud or mistakes alleged and the counties, cities, or townships and the precincts in which they exist.

(g) The petition specifies the counties, cities, townships, and precincts in which the recount is requested.

(h) If the office is the office of state representative, a copy of the petition is filed with the clerk of the house of representatives. If the office is the office of state senator, a copy of the petition shall be filed with the secretary of the senate.

Defendants first contend that there is no "indication in [Bormuth's] complaint or the attached exhibits that he met the statutory requirements for a recount petition" laid out in MCL § 168.879(1). (Doc. #10 at 13). More specifically, Defendants argue that Bormuth did not allege in his petition that he was "aggrieved on account of fraud" as the statute requires, "nor could he because the vote count difference and the request to only recount one precinct render the entire

13

request for relief futile."[7]  (*Id.* at 13-14).  Given this, Defendants conclude that Bormuth "cannot

be 'aggrieved' under Michigan law."  (*Id.* at 14).  This particular argument lacks merit as it rests

on too narrow a definition of "aggrieved" as that term is used in the statute.

> The Court's analysis is informed by longstanding Michigan law which holds that:

>> Public policy requires that statutes controlling the manner in which elections
>> are conducted be construed as far as possible in a way which prevents the
>> disenfranchisement of voters through the fraud or mistake of others.
>> *Lindstrom v Board of Canvassers of Manistee County*, 94 Mich 467, 469; 54
>> NW 280 (1893); *Groesbeck v Board. of State Canvassers*, 251 Mich 286,
>> 291-292; 232 NW 387 (1930).  Therefore, we must not construe the statute
>> to impose technical requirements preventing a recount unless such a
>> construction is clearly required by the language the Legislature employed.

*Kennedy v Bd. of State Canvassers*, 127 Mich. App. 493, 496-97 (1983).

Neither MCL § 168.879 nor the Michigan election law, MCL § 168.1 *et seq.*, defines the

term "aggrieved."  Nor does MCL § 168.879 mention futility as a consideration in reviewing a

petition for recount.  Again, it merely requires that the candidate seeking a recount be

"aggrieved."  When it comes to running for public office, it should go without saying that any

candidate whose vote total is negatively impacted by fraud has been "aggrieved."  This

interpretation of the term "aggrieved" is consistent with its plain meaning,[8] and with the

Michigan Supreme Court's instructions that election laws be construed so as to "prevent[] the

disenfranchisement of voters."  *Lindstrom*, 94 Mich. at 469.  Defendants' position, on the other

hand – that a candidate can only be "aggrieved" by fraud if it causes him to lose an election he

---

[7] As noted above, Bormuth lost the primary election by 821 votes.  The total number of votes
cast in the precinct for which Bormuth seeks a recount was 100, with Bormuth losing by a total
of 84 to 15 (with one write-in vote for another individual).  (Doc. #1 at 63).

[8] For instance, one of Blacks Law Dictionary's definitions for the term "aggrieved" is simply
"having legal rights that are adversely affected."  *Aggrieved*, *Black's Law Dictionary* (10th ed.
2014).  Candidates for public office have a right, independent of the outcome of an election, to
have votes in their favor accurately tabulated.  Indeed, without that basic right, the right to a
recount – if enough votes were in dispute – would be meaningless.

otherwise would have won – disenfranchises those voters whose votes were fraudulently tabulated and improperly imposes a "technical requirement[]" not contained in the statute – that the fraud must have been pervasive enough to alter the election's outcome. *Kennedy*, 127 Mich. App. at 497. Notably, Defendants do not cite to any statutory provision or case law to support applying the narrow definition of "aggrieved" they propose. Accordingly, the Court rejects this argument.

While Defendants' specific argument that Bormuth could not have been "aggrieved on account of fraud" fails for the reasons stated above, their more general one, that he failed to satisfy the statutory requirements for a recount (Doc. #10 at 13), is valid because Bormuth's recount petition (Doc. #1 at 66) did not allege fraud in a way that satisfies MCL § 168.879(1)'s second and sixth requirements, subparts (b) and (f).[9]

Subpart (b) of the statute required Bormuth to allege that he was "aggrieved on account of fraud." MCL § 168.879(1)(b). But Bormuth made no such allegation. To the contrary, he claimed to be "aggrieved over the *possibility of* fraud." (Doc. #1 at 66) (emphasis added). This language is insufficient because the words "possibility of" clearly indicate only that Bormuth may or may not have been aggrieved on account of fraud, as opposed to the requisite allegation

---

[9] Bormuth satisfied the recount statute's first, third, fourth, fifth, seventh and eighth requirements. The statute's first requirement is met because Bormuth ran for office as a state representative for the 64th District, which is located wholly within Jackson County. (Doc. #1 at 66). The third requirement is met because Bormuth filed his recount petition on August 11, 2016, within forty eight hours of when the Board of Canvass completed their canvass on August 9, 2016. (*Id.*). The fourth requirement is met because Bormuth presented and filed this petition with the Secretary of State. (*Id.*). The fifth requirement is met because the petition is written, signed by Bormuth, and notarized. (*Id.*). The seventh requirement is met because Bormuth, in his petition, specifies that the recount is requested in the County of Jackson, City of Jackson, Ward 1, Precinct 2. (*Id.*). The eighth requirement is met because a copy of the petition was filed with the clerk of the house of representatives. (*Id.*).

that actual fraud took place.[10]

Nor do Bormuth's assertions in his petition that (1) a 2006 University of Connecticut study purportedly found that the type of voting terminals used in Jackson County were "vulnerable" to "a devastating array of attacks"; or (2) Barry County, Michigan experienced "multiple past problems with these machines," satisfy subpart (b)'s requirements. Both of these assertions merely raise the theoretical possibility that the vote for which Bormuth sought a recount was actually the product of fraud.[11] (*Id.*). Thus, he failed to satisfy the statute's second requirement.[12]

Bormuth also failed to satisfy the statute's sixth requirement because his petition did not "set forth *as nearly as possible* the nature and character of the fraud or mistakes alleged and the counties, cities, or townships and the precincts in which they exist." MCL § 168.879(1)(f) (emphasis added). The Court understands that this requirement is to be met "as nearly as possible" or to the extent that Bormuth can provide information on the nature and character of

---

[10] This language is also insufficient to allege fraud in this particular case because "the *possibility of* fraud" exists in every election.

[11] Although the statute speaks to the required contents of the *petition for recount*, *see* MCL § 168.879(1) (noting that "The petition [must] allege[]"), the Court notes that the allegations in Bormuth's complaint are similarly insufficient to constitute an allegation of actual fraud in the particular precinct for which he requested a recount. In his complaint, Bormuth asserts that he "has no hard evidence that fraud took place in Ward 1, Precinct 2 or any other precinct." (Doc. #1 at ¶ 68). He claims that because of hostility from others and a suspicious vote count, "[i]f any candidate would be subject to fraud, it would be [him]." (*Id.*). Elsewhere in his complaint, Bormuth mentions threats of "possible fraud" and the "risk of voter fraud." (*Id.* at ¶¶ 61, 62). Again, none of this language amounts to an allegation of actual fraud at the challenged precinct.

[12] In his response to Defendants' motion to dismiss, Bormuth argues that he met the statutory requirements for a recount petition because he "was only required to allege fraud or mistake, not prove it." (Doc. #11 at 22-23). While Bormuth is correct that the statute does not require him to "prove" fraud – indeed, it specifically contemplates that "evidence of wrongdoing" is not required – as explained above, he errs in not understanding that the statute required him to have alleged that he was actually "aggrieved on account of fraud." MCL §168.879(1)(b). To be clear, the Court's analysis is not based on any failure by Bormuth to provide evidence of fraud.

the fraud and where it took place.  Bormuth's vague statement that he is "aggrieved over the possibility of fraud" does not specify the nature and character of the alleged fraud.  As best as the Court can tell, Bormuth's recount petition indicates that his issue is with the election's use, in general, of a particular kind of voting machine.  In his petition, he cited a 2006 University of Connecticut evaluation that he believes raises potential concerns about the accuracy of "Optical Scan Terminal voting machines," which he alleges are used in the City of Jackson.  (Doc. #1 at 66).  He also wrote that "[t]here have been multiple past problems with these machines including incorrect total vote counts in Barry County, Michigan."  (*Id.*).

But this information does not shed light on the nature and character of any alleged fraud *in this case*.  Bormuth's petition did not describe the nature and character of the "possibility of fraud" he is alleging.  Nor did he tie it to the County of Jackson, City of Jackson, Ward 1, Precinct 2 – the particular precinct where he is requesting the recount.  For instance, Bormuth's general statement about "past problems" with machines in Barry County does not explain how, why, or to what extent Bormuth is "aggrieved over the possibility of fraud" and why he should be granted a recount in Precinct 2 (located within Jackson County – an entirely different county). In addition, the ten-year-old study he cited that found the voting machines to be "vulnerable to 'a devastating array of attacks'" says little about the nature and character of the fraud Bormuth is alleging possibly took place on August 2, 2016 in Ward 1, Precinct 2.  (*Id.*).  He also doesn't explain why the fraud only "possibly" took place, nor why he cannot make this assertion with more certainty.  Without this information, even liberally construing the contents of Bormuth's petition, the Court cannot find that it sufficiently identified or elaborated on the nature and character of any alleged fraud to satisfy the statute's sixth requirement.

For all of these reasons, Bormuth's petition did not satisfy all of the statutory

prerequisites to granting his recount petition. Accordingly, his claim that Defendants violated his rights under MCL § 168.879(1) when his recount petition was denied fails.

Bormuth's attempts to approach his recount claim from other angles fail as well. For instance, Bormuth argues that the "Michigan Legislature obviously intended that every candidate have the right [he] seeks to exercise" in passing MCL § 168.179 and § 168.862.[13] (*Id.* at ¶ 65). Bormuth cites MCL § 168.179 as stating: "The votes cast for any candidate for the office of state senator or representative at any primary or election shall be subject to recount." (*Id.*). But here, Bormuth omits the last few words of this provision: "as provided in chapter 33 of this act." (*Id.*). And chapter 33 of the Michigan Election Law (MCL § 168.1 *et seq.*) lays out the process for obtaining a recount, which includes filing a petition that complies with the statutory requirements laid out above in MCL § 168.879(1). Thus, because a candidate is required to petition for a recount, the right to a recount is not automatically guaranteed to everyone who seeks it, as Bormuth seems to allege.

Bormuth also cites MCL § 162.862: "A candidate for office who believes he or she is aggrieved on account of fraud or mistake in the canvass or returns of the votes by the election inspectors may petition for a recount of the votes cast for that office in any precinct or precincts *as provided in this chapter*." (*Id.* at ¶ 65) (emphasis added). But once again, the language that says "as provided in this chapter" means that Bormuth's right to a recount is subject to other provisions, such as the requirements for a petition for recount found in MCL § 168.879(1), which, as stated above, he did not satisfy. As a result, the Court disagrees with Bormuth's conclusion that the "plain and unambiguous language" of MCL § 162.862 imposes a duty on the Secretary of State that it "cannot refuse" and that this statute "allows random recounts to protect

---

[13] Bormuth cites to MCL § 168.162 in support of this assertion. (Doc. #1 at ¶ 65). Based on the language he quotes, it appears he meant to cite to MCL § 162.862.

the integrity of the voting process" without any restrictions.  (*Id.*).

> d.    *Bormuth Fails to State an Equal Protection or Due Process Claim for a Recount*

Bormuth also alleges that the denial of his recount petition violates "the right guaranteed to . . . qualified voters by and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment" to have their votes cast and tabulated "fairly and free from voting machine error or manipulation" by those working the polls.  (*Id.* at ¶ 64).  While qualified voters most certainly are entitled to have their votes properly tabulated, that fundamental right is not before the Court.  Rather, the question before the Court is whether Bormuth has pled sufficient factual allegations in his complaint to state a claim for relief under the Equal Protection and/or Due Process Clauses.  For the reasons discussed below, he has failed to do so.

As to his equal protection claim, the Fourteenth Amendment generally demands "that all persons similarly situated should be treated alike."  *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege either:  "(1) that a challenged statute or regulation discriminates on its face; or (2) that, although facially neutral, the regulation has a disparate impact on a given group; or (3) that the facially neutral regulation is being unequally administered by the defendants."  *Wellmaker v. Dahill*, 836 F. Supp. 1375, 1385 (N.D. Ohio 1993) (internal citations omitted).  Here, none of the three criteria are met.  MCL § 168.879(1) is facially neutral because its requirements apply to all candidates seeking a recount, and Bormuth does not allege otherwise.  Nor does he allege that the statute, as crafted, has a disparate impact on a particular group of people.  The only potential issue raised by Bormuth is whether the statute was "unequally administered" on account of religion and/or partisan politics.  But, as to that point, Bormuth's complaint fails to allege sufficient facts against Defendant Johnson to state a claim for relief.

19

In his complaint, Bormuth alleges that he is a "Pagan Druid," and he does make some factual allegations, which, construed in a light most favorable to Bormuth, suggest that poll workers at the precinct at which he voted treated him disrespectfully and inappropriately on account of his religious beliefs and political positions.  *See supra* at 2-3.  He also alleges that "all christians [sic] in Jackson were hostile to his Pagan candidacy.  The Republican Party was hostile as evidenced by Representative Poleski's complaint.  The Democratic Party was hostile as evidenced by their recruitment of Ron Brooks to run against the Plaintiff.  At least one precinct captain was hostile to the Plaintiff."  (Doc. #1 at ¶ 68).  But notably absent from Bormuth's complaint are allegations of fact which link any such improper conduct to the individual against whom he is seeking injunctive relief:  Michigan Secretary of State Defendant Johnson.

In his complaint, Bormuth refers to Johnson as "the Christian Republican Secretary of State of Michigan."  (*Id.* at ¶ 8).  He goes on to allege that Johnson's "stance of refusing [him] a precinct recount is a partisan Christian effort to deny a Pagan candidate a fair election," and "a deliberate attempt by this Christian Secretary of State to deny a Pagan candidate and the voters in his district their Constitutional rights."  (*Id.* at ¶¶ 56, 66).  He alleges that his "Pagan pro-abortion/pro-environment anti-[C]hristian" television ads "are the real reason why [he] is being persecuted by the partisan Christian Secretary of State in this matter."  (*Id.* at ¶¶ 23-24).  But these conclusory assertions regarding Johnson's purported motivation are not *factual* allegations of wrongdoing by her, and are therefore insufficient to state a claim for relief under the pleading standards discussed above.  *See Twombly*, 550 U.S. at 555 (a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'
. . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice…") (quoting *Twombly*, 550 U.S. at 570).  Indeed, it is notable that,
consistent with his failure to allege actual fraud in his recount petition, Bormuth admits in his
complaint that Brooks "may have won this election by the computed total certified *by the
Secretary of State*."  (Doc. #1 at ¶ 68) (emphasis added).  Thus, any assertion by Bormuth of
wrongdoing by Defendant Johnson is, at most, speculative and subject to dismissal.  *League of
United Latin Am. Citizens*, 500 F.3d at 527 (6th Cir. 2007).[14]

Bormuth's due process claim similarly fails.  The Sixth Circuit has held that the Due
Process Clause "is implicated in 'exceptional' cases where a state's voting system is
'fundamentally unfair.'"  *Ne. Ohio Coal. for the Homeless v. Husted*, No. 16-3603, 2016 WL
4761326, at *16 (6th Cir. Sept. 13, 2016) (citing *Warf v. Bd. of Elections*, 619 F.3d 553, 559 (6th
Cir. 2010) (quoting *League of Women Voters of Ohio*, 548 F.3d at 478)).  A system may be
fundamentally unfair, "for example, if a state uses non-uniform procedures that result in
significant disenfranchisement and vote dilution."  *Id.* (citing *League of Women Voters of Ohio*,
548 F.3d at 478).  Here, the requirements for petitioning a recount under MCL § 168.879(1) are
not fundamentally unfair or burdensome, and they apply uniformly to all candidates seeking a
recount.  Once again, Bormuth has not alleged otherwise.  Indeed, MCL § 168.879(1) is
relatively lenient in that it does not require a petitioner to provide evidence of fraud or mistake as
a prerequisite to granting a recount.  Still, it is legitimate for the State to require all recount
petitioners to meet some basic requirements, such as making an allegation of actual fraud or
mistake.  Rather than causing significant disenfranchisement and vote dilution, this statute helps

---

[14] For these same reasons, Bormuth has failed to state a claim for relief against Johnson under 52
U.S.C. § 10307(a).  *See supra* note 4.

the State ensure the timely certification of election results, while giving candidates the opportunity to review the results in cases of alleged fraud or mistake. Accordingly, Bormuth has failed to state a due process claim.

For all of the foregoing reasons, Bormuth's recount claim should be dismissed in its entirety as to Defendant Ruth Johnson.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the Defendants' Motion to Dismiss [**10**] be **GRANTED IN PART**. Bormuth's claims against Defendant Bill Schuette should be **DISMISSED WITH PREJUDICE**. Bormuth's recount claim against Defendant Ruth Johnson should be **DIMISSED WITH PREJUDICE**. The Court is taking Bormuth's remaining electronic filing claim against Defendant Ruth Johnson **UNDER ADVISEMENT**, and it will issue a separate Report and Recommendation as to that matter in due course.


Dated: October 24, 2016                          s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 24, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager