UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BORMUTH,

       Plaintiff,                      Civil Action No. 16-13166
                                           Honorable Nancy G. Edmunds
                                           Magistrate Judge David R. Grand

v.

RUTH JOHNSON,

       Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS [10]

This civil action was commenced on September 1, 2016, by *pro se* Plaintiff Peter Bormuth ("Bormuth") as a challenge to alleged wrongs he suffered in connection with his unsuccessful run for the 64th District Michigan House of Representative seat in the August 2, 2016 Democratic Party primary election.[1]  Bormuth initially sued both Defendant Ruth Johnson ("Johnson"), in her official capacity as Michigan Secretary of State, and Defendant Bill Schuette ("Schuette"), in his official capacity as Michigan Attorney General, but the claims against Schuette have since been dismissed with prejudice. (Doc. #20 at 8). Bormuth's complaint asserts claims based on the alleged wrongful denial of his recount petition ("recount" claim) and alleged unconstitutional requirement that campaign finance disclosure documents be filed via the Secretary of State's electronic filing system ("electronic filing" claim).

On September 30, 2016, Defendants filed a motion to dismiss both claims (Doc. #10), and the motion was fully briefed. (Docs. #11, #12). In light of the looming election and

---

[1] An Order of Reference was entered on September 1, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #3).

Bormuth's request for expedited consideration, this Court initially addressed only the recount claim, recommending on October 24, 2016, that it be dismissed. (Doc. #13). That recommendation was adopted on January 10, 2017. (Doc. #20). Thus, Bormuth's sole remaining claim is his electronic filing claim against Johnson. The Court heard oral argument as to that matter on December 6, 2016.[2]

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [**10**] be **GRANTED** and that Bormuth's electronic filing claim be **DISMISSED**.

## II. REPORT

### A. Background

Bormuth was a Democratic primary candidate for the 64th District Michigan House of Representative seat in the August 2, 2016 primary election. (Doc. #1 at ¶ 7). Prior to the election, Bormuth filed a Statement of Organization Form for Candidate Committees with Elections Director Collen Garety at the Jackson County Courthouse office. (*Id.* at ¶ 12). The Michigan Department of State received and stamped this form on December 4, 2015. (*Id.*). Bormuth petitioned to waive the requirement to file campaign finance statements. (*Id.* at ¶ 13). Hoping to run unopposed, he did not expect to receive or spend the amount of money that triggers this requirement – $1,000.00.[3] (*Id.*). But Bormuth, a Pagan Druid, alleges that local Christian Democratic party leaders did not want him to run unopposed in the primary election,

---

[2] On April 6, 2017, Bormuth filed a Motion to Supplement under Fed. R. Civ. P. 15(d). (Doc. #24). Defendants do not oppose Bormuth's request but ask that the Court reject his "unfounded inferences." (Doc. #26). The Court will grant this Motion to Supplement under Fed. R. Civ. P. 15(d) (Doc. #24) and take Bormuth's supplemental documents into account in this Report and Recommendation.

[3] Bormuth apparently received the reporting waiver, and acknowledged that it would be "automatically lost if [he] exceed[ed] the $1,000 threshold and all required campaign statements must be filed." (*Id.* at 25).

and thus recruited another candidate to run against him.  (*Id.* at ¶ 14).  Bormuth describes this other candidate as "a Christian Minister with no previous political involvement."  (*Id.*).

Now facing a primary challenge, Bormuth determined that he would exceed the $1,000 reporting waiver threshold.  (*Id.* at ¶ 15).  On June 1, 2016, Bormuth went to the Jackson County Courthouse to amend his statement of organization.  (*Id.*).  There, Garety, the elections director, informed him that this amendment was not necessary.  (*Id.*).  Instead, he was now required to file a pre-primary campaign statement by July 22, 2016.  (*Id.*).  Prior to telling him about this requirement, Garety had called the Michigan Secretary of State's office in Lansing and spoke to Evelyn Quiroga, Director of the Disclosure Data Division.  (*Id.*).

Bormuth alleges that on July 22, 2016 (the deadline for filing his pre-primary campaign statement), he could not find the link on the Secretary of State's website to the campaign finance disclosure forms he was required to file.  (*Id.* at ¶ 16).  He describes himself as a "techno-peasant with limited computer skills."  (*Id.*).  He claims he can only browse the web, send emails, and compose documents in Microsoft Word.  (*Id.*).  Bormuth emailed Disclosure@Michigan.gov for help.  (*Id.*).  That same day, Mark Diljak, an analyst at the Michigan Bureau of Elections Data Disclosure Division, responded to Bormuth's email with a link to the forms.  (*Id.* at ¶ 17).

On July 25, 2016, Bormuth again emailed Diljak about the forms.  (*Id.* at ¶ 18).  Bormuth advised that he had spent two hours at the Jackson College Library filling them out online, but his information did not save, and he was apparently unable to file them via the Secretary of State's electronic filing system.  (*Id.*).  Diljak sent the following response:  "You can print and fill out the [forms] and then fax them to us if you like.  Our fax number is 517-373-0941."  (*Id.* at ¶ 18; 30).  Bormuth had trouble downloading the forms, so Garety downloaded them for him at the Jackson County Courthouse.  (*Id.* at ¶ 19).  That afternoon, Bormuth faxed his completed

3

forms to the number Diljak had provided. (*Id.* at ¶ 20). Upon Bormuth's request, Diljak sent him an e-mail acknowledging receipt of the fax. (*Id.* at ¶¶ 21-22; 31-32).

The next day, on July 26, 2016, Bormuth received a copy of a complaint sent to the Secretary of State and dated July 23, 2016 that was filed by Earl Poleski. (*Id.* at ¶ 23; 51). Bormuth describes Poleski as "the current Christian Republican incumbent in the 64th District whose seat [he] was seeking." (*Id.* at ¶ 23). Poleski's complaint alleged that Bormuth's candidate committee might have violated the campaign finance law. (*Id.* at ¶ 23; 51). According to Bormuth, "Poleski saw one of [Bormuth's] Pagan pro-abortion/pro-environment anti-[C]hristian television political ads which offended him and he filed a complaint based on his knowledge of how much a TV ad costs." (*Id.*). Moreover, Bormuth asserts that these ads "are the real reason why [he] is being persecuted by the partisan Christian Secretary of State in this matter." (*Id.* at ¶ 24).

The following day, on July 27, 2016, Bormuth took Poleski's complaint to Garety. (*Id.* at ¶ 25). Garety then emailed Quiroga to verify Bormuth's compliance with the campaign finance law. (*Id.* at ¶ 25; 33). In her response, Quiroga indicated that "the committee [i.e., Bormuth] ha[d] not filed the Pre-Primary [Campaign Statement] according to [their] records" because although the committee had "attempted" to file this form via fax, it "was required to file [the form] electronically." (*Id.*). Quiroga also informed Garety that this information had been communicated to the committee. (*Id.*).

On July 28, 2016, Bormuth received a letter from the Secretary of State dated July 26, 2016. (*Id.* at ¶ 26; 53-54). The letter informed him that his submission of the fax did not comply with Michigan Campaign Finance Act (the "MCFA") § 18(3) and (4)$^{4}$ and that "late filing fees

---

[4] MCFA § 18 is also referenced as M.C.L. § 169.218.

were accruing." (*Id.* at ¶ 26); M.C.L. § 169.218(3)-(4). Bormuth subsequently emailed Quiroga "asserting his Constitutional right to run for public office and to file required forms by certified mail or fax." (Doc. #1 at ¶ 27). He also requested "the section of the MCFA the Department of State was relying on since there is no definition of electronic in the statute." (*Id.* at ¶ 28; 36). Quiroga's July 29, 2016 email explained that their interpretation is based on the first paragraph of MCFA § 18, which "required [the Secretary of State] to develop a system" that "permits committees that are required to file statements or reports [] with the secretary of state to file those statements or reports electronically and that provides internet disclosure of [the filings] on a website." (*Id.* at ¶ 29; 36) (citing M.C.L. § 169.218(1). Quiroga further advised that "[t]he system developed requires either the use of the MERTS software or an approved vendor software," and that "[t]herefore, email, fax, etc. are not considered electronically filed. (*Id.*). Bormuth responded that he still felt that "transmission by fax was a form of electronic filing that allowed posting on a web site through simple scanning of documents." (*Id.* at ¶ 30). Thus, he believed the Secretary of State's interpretation "unnecessarily and unfairly burdened his important interest in the continued availability of political opportunity." (*Id.*).

On August 2, 2016, Bormuth sent Quiroga this message in an email:

> In order to maintain an active case and controversy, I will not be refilling [sic] my pre-primary campaign disclosure forms, as I believe I complied with the electronic filing requirement when I followed the instructions of your elections analyst. Your reinterpretation of the law, after receiving a complaint from that evil Christian scum Earl Poleski, creates an unconstitutional restriction that excludes people without computer literacy from running for public office.

(*Id.* at ¶ 32; 39). On August 17, 2016, Bormuth faxed his post-primary campaign statement to the Secretary of State, and Diljak again acknowledged receipt of it. (*Id.* at ¶¶ 43-44; 68).

On August 18, 2016, Bormuth received another notice from the Secretary of State of his

5

failure to electronically file his pre-primary campaign statement as required by the statute. (*Id.* at ¶ 47; 81). A separate notice informed him that he had "lost the Reporting Waiver by receiving or spending more than $1,000.00 in an election," and was therefore ***required to file*** pre-election, post-election, and annual campaign statements, along with late contribution reports. (*Id.* at 82). Importantly, this letter also advised that "[a]ny committee that spends or receives $5,000.00 or more in any calendar year is ***required to file electronically***." (*Id.*) (emphasis added). On the same date Bormuth also received another notice from the Secretary of State which advised him, "[b]ecause the committee exceeded the $5,000.00 electronic filing threshold, all campaign statements ***must be filed electronically*** …" (*Id.* at 84) (emphasis added).

About a week later, Bormuth received a letter notifying him of a $1,000.00 late filing fee and threatening him with Department of Treasury Collection. (*Id.* at ¶ 52; 87). He also received a letter dated August 18, 2016 which advised him that his post-primary campaign finance form was rejected because it was submitted by fax. (*Id.* at ¶ 51; 84-85). Finally, months later, Bormuth received additional notifications regarding his unfiled pre-primary and post-primary campaign statements, including final billing notices for the late filing fees he still owed, now totaling $2,000.00 ($1,000.00 for each unfiled campaign statement). (Doc. #24 at 6-8).

On September 1, 2016, Bormuth filed his instant complaint pursuant to 28 U.S.C. § 1343(a)(3)-(4); 42 U.S.C. §§ 1973i(c),[5] 1983; and the Equal Protection and Due Process Clauses of the Fourteenth Amendment (among other statutes). (*Id.* at ¶¶ 58-59, 61, 70-72). He seeks a declaratory judgment requiring Johnson to accept his pre-primary and post-primary campaign statements sent by fax on July 25, 2016 and August 17, 2016, respectively. (*Id.* at ¶ 6). In

---

[5] This statute has been transferred to 52 U.S.C. § 10307. That statute, which is part of Chapter 103, Enforcement of Voting Rights, and entitled "Prohibited [A]cts," does not provide any specific right to filing campaign statements and reports by fax.

6

addition, he seeks a preliminary and permanent order requiring Johnson "to accept Campaign Finance Disclosure filings by fax or paper from any candidate for any office and prohibiting [Johnson], [her] respective agents, servants, employees, attorneys, successors, and all persons acting in concert with each or any of them from assessing fees or penalties against any candidate for office for filing in such a manner." (*Id.* at ¶ 6; 23).  He also seeks an award of nominal damages and costs. (*Id.* at 23).

### B. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).  To show entitlement to relief, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the

factual allegations in the complaint[6] as true. *League of United Latin Am. Citizens*, 500 F.3d at 527; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

---

[6] A reviewing court's consideration of a motion to dismiss under Rule 12(b)(6) is ordinarily confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Thus, assessment of the complaint's facial sufficiency ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, a court ruling on a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The documents referred to herein all satisfy these requirements.

### C. Analysis

#### 1. *Bormuth's Electronic Filing Claim Should be Dismissed*

##### a. *MCFA § 18*

MCFA § 18 requires the development and implementation of an electronic filing and internet disclosure system by the Secretary of State as follows:

> (1) The secretary of state shall develop and implement an electronic filing and internet disclosure system that permits committees that are required to file statements or reports under this act with the secretary of state to file those statements or reports electronically and that provides internet disclosure of electronically filed statements or reports on a website.
>
> (2) The secretary of state shall offer each committee required to file with the secretary of state the option of filing campaign statements or reports electronically, as described in subsection (1).
>
> (3) Beginning with the annual campaign statement due January 31, 2014, each committee required to file with the secretary of state that received or expended $5,000.00 or more in the preceding calendar year or expects to receive or expend $5,000.00 or more in the current calendar year shall electronically file all statements and reports required under this act, as described in subsection (1).
>
> (4) If a committee was not required to file a campaign statement under subsection (3) only because it did not meet the applicable threshold of receiving or expending $5,000.00 or more, but the committee later reaches that threshold, the committee shall notify the secretary of state within 10 business days after reaching that threshold and shall subsequently file electronically all statements and reports required under this act.
>
> (5) The secretary of state shall permit a committee to electronically file statements and reports required under this act, as described in subsection (1), except an original statement of organization, after the committee treasurer and, for a candidate committee, the candidate has signed and filed a form designed by the secretary of state to serve as the signature verifying the accuracy and completeness of each statement or report filed electronically.

M.C.L. § 169.218.

Bormuth argues that the Secretary of State "has refused to follow the law" by not permitting him to file his campaign finance statements by fax. Specifically, he contends that

MCFA § 18(2) gives him "the option of filing [those statements] by fax." (Doc. #11 at 24-25, 29). But Bormuth's interpretation is inconsistent with the statute's plain language, which must control the analysis. *See SBC Health Midwest, Inc. v. City of Kentwood*, 894 N.W.2d 535 (Mich. 2017) ("'When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.' 'This requires us to consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme.' This Court, as with all other courts, must give effect to every word, phrase, and clause in a statute, to avoid rendering any part of the statute nugatory or surplusage.") (internal citations omitted). Subsections (2), (3), and (4) must be read in conjunction with one another, and doing so makes clear that only a particular subset of campaign finance filers (which did not include Bormuth) have the "option" of filing their reports through the Secretary of State's electronic filing system.

Subsection (2) provides that all candidate committees required to file campaign statements – i.e., those that receive or spend more than $1,000.00 in an election – have "the option" of filing campaign statements or reports electronically by using the electronic filing and internet disclosure system described in subsection (1). M.C.L. §§ 169.218(2), 169.224; *see* Secretary of State, *Instructions and Forms – Candidate Committees*, http://www.michigan.gov/sos/0,4670,7-127-1633_8723_11893-310334--,00.html (last visited June 15, 2017); *see* Michigan Bureau of Elections, *Appendix C The Reporting Waiver*, https://mertsplus.com/mertsuserguide/index.php?n=MANUALS.AppendixC (last visited June 15, 2017); *see also* (Doc. #1 at 82). But, the statute goes on, in subsections (3) and (4), to provide that committees who receive or expend $5,000.00 or more during the preceding calendar year, or who later reach this threshold, "shall electronically file all statements and reports

10

required under this act, as described in subsection (1)." M.C.L. § 169.218(3)-(4). In other words, while the statutory scheme makes electronic filing "optional" for committees that received or spent between $1,000.00 and $4,999.99 during the preceding calendar year, it *requires* electronic filing for committees that reach the $5,000.00 threshold. Bormuth does not dispute that during the relevant period his campaign eclipsed that threshold.[7] (Doc. #1 at 84). Accordingly, he was required to use the Secretary of State's "electronic filing and internet disclosure system" "as described in subsection (1)" of the statute. M.C.L. §§ 169.218(3)

That "system" does not contemplate or allow filing by facsimile. Subsection (1) required the Secretary of State to develop "an electronic filing and internet disclosure system" that both enables the electronic filing of the statements or reports, and also "provides internet disclosure of [those documents] on a website." M.C.L. § 169.218(1). Bormuth does not dispute that the Secretary of State's system satisfies these requirements, and nothing in the statute required the Secretary of State to develop a system that could process documents submitted via fax.

### b. Diljak's Instructions

Bormuth argues that Diljak's instructions "show[] that the Secretary of State's employees themselves though[t] filing by fax was a legal option under the MCFA." (Docs. #1 at ¶ 76; #11 at 24). That Diljak erroneously told Bormuth that he could submit his documents by fax is unfortunate, but it does not absolve Bormuth from having to comply with the law, or of the consequences of his non-compliance.

---

[7] At the hearing on this matter, Bormuth indicated his belief that the threshold for the electronic filing requirement was $20,000.00 in receipts or expenditures, rather than $5,000.00. While a prior version of the statute did contain that higher threshold, as the Secretary of State advised him in an August 16, 2016 letter, "On December 27, 2013 PA 252 [sic] was signed into law with immediate effect. This change lowered the electronic filing threshold to $5,000.00 from $20,000.00." (Doc. #1 at 84); 2013 Mich. Legis. Serv. P.A. 258 (S.B. 440) (WEST).

11

The parties do not cite to any law that addresses Bormuth's reliance on Diljak's filing instructions, yet the Court finds instructive the body of case law holding that "[i]t is well settled that a taxpayer may not rely on an IRS agent's misstatement of the law." *Hollow v. United States*, No. 96-1229, 1998 WL 760908, at *2 (E.D. Tenn. Feb. 4, 1998) (collecting cases). In *United States v. Guy*, 978 F.2d 934, 938 (1992), the Sixth Circuit found that it was unreasonable for the plaintiff to rely on the statements of an IRS agent regarding his tax liability, so the government was not equitably estopped from recovering an erroneous tax refund. In making its ruling, the Sixth Circuit relied on the Supreme Court's general rule that "those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law." *Id.* (quoting *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63 (1984)). The circumstances in *Guy* are analogous to those of this case, particularly given that letters from the Secretary of State promptly informed Bormuth that Diljak's instructions were "contrary to the law" and that he could amend his filing to comply with the MCFA.

Moreover, Bormuth's conscious decision to disregard these instructions from the Secretary of State renders Diljak's erroneous advice a non-issue, both legally and as a matter of equity. Bormuth faxed his pre-primary campaign statement on July 25, 2016, three days after the filing deadline. (Doc. #1 at ¶ 15; 81). Thus, late filing fees applied to Bormuth's pre-primary filing from the start. As elaborated above, the day after he sent the pre-primary fax, the Secretary of State notified Bormuth of his error and provided him with information about using the free MERTS software for compliance with the "mandatory electronic filing." (*Id.* at 53-54). He was also advised about the accrual of late filing fees. (*Id.*).[8] Bormuth then could have

---

[8] Bormuth received additional notices regarding his pre-primary campaign statement's non-compliance with the MCFA's electronic filing requirement, free access to the MERTS software, and the accrual of late filing fees. (*See, e.g.*, Doc. #1 at 81-82, 87).

12

immediately taken steps to comply with the law, but he chose not to act, allowing the late fees to quickly reach the maximum fine of $1,000. (*Id.* at 87). In other words, even ignoring any fee attributable to the one day in question,[9] Bormuth is solely responsible for the full late fee as to his pre-primary filing obligation. Similarly, he has only himself to blame for failing to properly file his post-primary campaign statement when it was due, and thus is solely responsible for the late fee incurred with respect to that filing obligation.

### c. Bormuth's Fourteenth Amendment Equal Protection and Due Process Claims Fail

Even if the principles in *Guy* and *Heckler* do not apply, Bormuth's allegations regarding a violation of his constitutional rights fail. Defendants argue that Bormuth's electronic filing claim should be dismissed because MCFA § 18 survives rational basis review. (Doc. #10 at 15-17). They conclude that rational basis review applies because Bormuth makes an improper "as-applied" challenge to the statute and raises no protected class. (*Id.* at 15). They argue that the Secretary of State providing electronic filing software for free to all state-level campaign committees is a "policy choice . . . plainly within the executive discretion of Michigan's chief elections officer." (*Id.* at 16).

In his response, Bormuth makes clear that he is "not arguing that [MCFA § 18] is unconstitutional" (Doc. #11 at 4, 24) and is "not asking this Court to strike down any Michigan laws." (*Id.* at 29). Rather, he argues that the Secretary of State's *interpretation* of MCFA § 18 created an unconstitutional computer-literacy requirement. In his view, this requirement violates the Fourteenth Amendment Equal Protection Clause by discriminating against the elderly, the poor, and a "techno-peasant" such as himself. (Doc. #1 at ¶¶ 71-72). He also alleges that the

---

[9] The Court also notes that the Secretary of State informed Bormuth that "[t]he MCFA provides that late filing fees can be waived for good cause," (Doc. #1 at 87), but there is no indication that Bormuth applied for this waiver.

13

requirement violates the Due Process Clause. (*Id.* at ¶ 70). He argues that enforcing the statute "as written" – and not as Defendants interpret it – will solve both of these problems. (Doc. #11 at 30).

Regarding his equal protection claim, the Fourteenth Amendment generally demands "that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege either: "(1) that a challenged statute or regulation discriminates on its face; or (2) that, although facially neutral, the regulation has a disparate impact on a given group; or (3) that the facially neutral regulation is being unequally administered by the defendants." *Wellmaker v. Dahill*, 836 F. Supp. 1375, 1385 (N.D. Ohio 1993) (internal citations omitted). Here, MCFA § 18 is facially neutral because its requirements apply to all candidate committees. Bormuth does not allege otherwise. Instead, he makes claims as to the second and third criteria. Yet these allegations are insufficient to establish an equal protection violation.

Bormuth alleges that the Secretary of State's interpretation of the statute created a computer-literacy requirement that discriminates against particular groups of people: the elderly, the poor, and techno-peasants such as himself. Determining whether there has been a violation of the plaintiff's equal protection rights "involves first ascertaining whether a suspect classification or fundamental interest is involved and then, based on this determination, applying either strict scrutiny or a rational relationship analysis to the challenged legislation." *Birth Control Ctrs., Inc. v. Reizen*, 743 F.2d 352, 358 (6th Cir. 1984). Where no suspect class and no fundamental right is implicated, the rational basis test applies. *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (citing *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993); *37712, Inc. v. Ohio Dept. of*

*Liquor Control*, 113 F.3d 614, 622 (6th Cir. 1997)); *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007).

Here, no suspect classification is involved. The Supreme Court has declined to find that classifications based on age and wealth are suspect. *Cleburne Living Ctr., Inc.*, 473 U.S. at 441 (citing *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976)); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28-29 (1973); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). Bormuth provides no basis for recognizing "techno-peasants" as a protected class. (Doc. #10 at 16).

A fundamental interest is not involved here either. In *McClafferty v. Portage Count Bd. of Elections*, 661 F. Supp. 2d 826, 835-36 (E.D. Ohio 2009) (collecting cases), the court determined that an amendment to a city charter that raised the minimum qualifying age for running for mayor to twenty three was "a restriction on the candidacy of those individuals who will not yet be 23 years old by the election date" and "the Supreme Court 'has never recognized a fundamental right to express one's political views through candidacy.'"[10] Along those lines, there is no fundamental right to public employment. *Id.* at 836 (citing *Snowden v. Hughes*, 321 U.S. 1, 7 (1944)). Moreover, the Supreme Court's holding "that the existence of barriers to candidates' access to a state primary ballot does not compel close scrutiny . . . supports a conclusion that there is no fundamental right to run for office." *Id.* (citing *Clements v. Fashing*, 457 U.S. 957, 963 (1982)). Because this case involves no suspect class and no fundamental right, it is appropriate to apply rational basis scrutiny.[11] *Id.*; *TriHealth, Inc.*, 430 F.3d 783, 790

---

[10] The court distinguished this restriction on the right "to express one's political views through candidacy" from a restriction on the right to vote, which is "a fundamental constitutional right." *McClafferty v. Portage Count Bd. of Elections*, 661 F. Supp. 2d 826, 835-36 (E.D. Ohio 2009).

[11] Where a constitutional challenge is made to an election regulation, the *Anderson-Burdick* framework lays out a three-step analysis for the reviewing court: (1) the court must consider the

15

(6th Cir. 2005) (citing *Fed. Commc'ns Comm'n*, 508 U.S. at 313-14; *37712, Inc.*, 113 F.3d at 622).

Under rational basis review, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne Living Ctr., Inc.*, 473 U.S. at 440. "[G]overnmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *TriHealth, Inc.*, 430 F.3d at 790 (citing *Fed. Commc'ns Comm'n*, 508 U.S. at 313-14; *37712, Inc.*, 113 F.3d at 622) (emphasis in original). The Supreme Court has held that when conducting rational basis review it will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the [government's] actions were irrational." *Kimel*, 528 U.S. at 84.

In this case, the electronic filing and internet disclosure system the Secretary of State implemented under MCFA § 18 advances the State interest of having uniform campaign finance reporting. (Doc. #12 at 5). As Johnson explains, uniform campaign finance reporting will give rise to desirable outcomes such as easier administration, fairness to all reporting parties, clear and accurate records, open and honest elections, full and fair disclosure of information, and proper regulation and monitoring of campaign contributions. (*Id.*). The requirement that all

---

character and magnitude of the asserted injury to the constitutional rights the plaintiff seeks to vindicate; (2) the court must identify and evaluate the precise interests the State presents as justifications for the burden imposed by its rule; and (3) the court must determine the legitimacy and strength of each of those interests and consider the extent to which those interests make it necessary to burden the plaintiff's rights. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 626-27 (6th Cir. 2016) (internal citation omitted); *Anderson v. Calebrezze*, 460 U.S. 780, 789 (1983). Bormuth cites this framework in his response brief but fails to apply it to the facts of this case. (Doc. #11 at 26). Moreover, this framework is used to address a constitutional challenge to a regulation. Here, Bormuth is challenging the interpretation of the statute as opposed to the statute itself.

16

office seekers who receive or spend a threshold amount comply with the electronic filing requirement in MCFA § 18 is rationally related to these State interests.[12]

Bormuth also alleges that the statute was "unequally administered" on account of religion and/or partisan politics. But Bormuth's complaint fails to allege sufficient facts against Johnson to state a claim for relief on that matter. He merely alleges that he is a Pagan Druid and that his fax submission was not accepted "only after" the Secretary of State received Poleski's complaint.[13] (Docs. #1 at ¶ 76; #11 at 24). Bormuth believes the Secretary of State's "refusal" to accept his filing by fax was a "deliberate attempt to harass and intimidate a Pagan candidate for advocating a Pagan morality in his campaign ads" and that this "partisan attack" by the Secretary of State and the Republican Party should not be allowed.[14] (Doc. #1 at ¶ 76).

But these conclusory assertions regarding Johnson's purported motivation are not *factual* allegations of wrongdoing by her. They are therefore insufficient to state a claim for relief under the federal pleading standards discussed above. *See Twombly*, 550 U.S. at 555 (holding that a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for

---

[12] That the MERTS software is provided at no charge and that there are resources (trainings, information, technicians) available to users with all levels of computer skills also runs against Bormuth's equal protection claim that the Secretary of State created an unconstitutional computer-literacy requirement.

[13] Poleski's complaint was filed on July 26, 2016. This same date appears at the top of the Secretary of State's letter to Bormuth notifying him of the requirement to file his documents electronically. (Doc. #1 at 53-54). It is not apparent from the letter that it was prepared in response to Poleski's complaint, and Bormuth does not provide evidence that supports this allegation.

[14] Bormuth makes similar allegations of harassment and intimidation in his Motion to Supplement Under Fed. R. Civ. P. 15(d). (Doc. #24 at 3). For the same reasons explained below, these unsupported allegations are also insufficient to state a claim for relief.

relief that is plausible on its face.' . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . ." (quoting *Twombly*, 550 U.S. at 570)). Any assertion by Bormuth of wrongdoing by Johnson is, at most, speculative and subject to dismissal. *League of United Latin Am. Citizens*, 500 F.3d at 527.

Bormuth's due process claim similarly fails. The Sixth Circuit has held that the Due Process Clause "is implicated in 'exceptional' cases where a state's voting system is 'fundamentally unfair.'" *Ne. Ohio Coal. for the Homeless v. Husted*, No. 16-3603, 2016 WL 4761326, at *16 (6th Cir. Sept. 13, 2016) (citing *Warf v. Bd. of Elections*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008))). A system may be fundamentally unfair, "for example, if a state uses non-uniform procedures that result in significant disenfranchisement and vote dilution." *Id.* (citing *League of Women Voters of Ohio*, 548 F.3d at 478). Here, the electronic filing requirement under MCFA § 18 is not fundamentally unfair; it applies uniformly to all candidate committees. In fact, rather than causing significant disenfranchisement and vote dilution, it helps the State ensure the uniform filing of required documents and the public disclosure of important campaign finance information. Indeed, this statute was enacted to counter public apathy towards the election process. H. Fiscal Agency Analysis, at 2 (Mich. 1999).[15] Accordingly, Bormuth has failed to state a due process claim.

For all of the foregoing reasons, Defendant Johnson's motion to dismiss should be granted and Bormuth's sole remaining electronic filing claim should be dismissed.[16]

---

[15] Available at: http://www.legislature.mi.gov/documents/1999-2000/billanalysis/House/htm/1999-HLA-4523-A.htm (last visited June 13, 2017).

[16] Upon dismissal of this claim, Bormuth's Motion Requesting Order Staying Collection of Late

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [**10**] be **GRANTED** and that Bormuth's sole remaining "electronic filing" claim be **DIMSSED WITH PREJUDICE**.

Dated: June 16, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the

---

Filing Fees Until Litigation is Completed will be moot. (Doc. #28). Accordingly, the Court will enter an order denying this motion.

objections.

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2017.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager